**No. 22-30311**

**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

Kenai Ironclad Corporation,

Plaintiff - Appellee

v.

CP Marine Services, L.L.C.; Ten Mile Exchange, L.L.C.,

Defendants - Appellants

---

**On Appeal from**

United States District Court for the Eastern District of Louisiana

2:19-CV-2799

---

# BRIEF OF APPELLEE KENAI IRONCLAD CORPORATION

---

SUBMITTED BY:

Martin S. Bohman
Harry E. Morse
Bohman Morse, L.L.C.
400 Poydras Street
New Orleans, LA 70130

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Kenai Ironclad Corporation | Martin Bohman and Harry Morse of Bohman Morse, L.L.C. New Orleans, LA |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| CP Marine Services, L.L.C. and Ten Mile Exchange, LLC | Alfred Rufty of Jones Walker, L.L.P. New Orleans, LA |

S/Harry E. Morse
Attorney of record for Kenai Ironclad Corporation

## STATEMENT REGARDING ORAL ARGUMENT

This case involves the plain application of law to clear facts. There is no need for oral argument.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ..................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS.................................................................................. iv

TABLE OF AUTHORITIES .............................................................................v

STATEMENT OF THE ISSUES........................................................................1

STATEMENT OF THE CASE...........................................................................1

1. Joe Dardar didn't try to help the IRON DON. He rammed it ........................2

2. CP Marine and Ten Mile Exchange invoiced Kenai for the ramming and continued to deprive them of the IRON DON.................................................4

SUMMARY OF THE ARGUMENT .....................................................................5

ARGUMENT ......................................................................................................6

1. Standard of Review.........................................................................................6

2. The District Court properly concluded that Joe Dardar rammed the M/V IRON DON intentionally. Then he sought to charge Kenai for the ramming ......................................................................7

3. Mr. Dardar's intentional conduct is not subject to a compensatory cap under *Exxon v. Baker* .......................................................................................9

4. The District Court was well within its discretion to afford prejudgment interest .........................................................................................11

CONCLUSION..................................................................................................13

CERTIFICATE OF SERVICE ..........................................................................13

CERTIFICATE OF COMPLIANCE..................................................................14

# TABLE OF AUTHORITIES

**Cases……………………………………………………………………Pages(s)**

*The Apollon*
22 U.S. 362 (1824)....................................................................................11

*Barto v. Shore Constr., LLC.*
801 F.3d 465 (5th Cir. 2015) ..........................................................................6

*Becker v. Tidewater, Inc.*
586 F.3d 358 (5th Cir. 2009) ..........................................................................6

*Bilmar Drilling, Inc. v. IFG Leasing Co.*
795 F.2d 1194 (5th Cir. 1986) ......................................................................11

*Clausen v. Icicle Seafoods, Inc.*
272 P.3d 827 (Wash. 2012) ..........................................................................10

*DePerrodil v. Bozovic Marine, Inc.,*
842 F.3d 352 (5th Cir. 2016) ..........................................................................6

*Exxon v. Baker*
554 U.S. 471 (2008)........................................................................... 9 - 10

*FDIC v. Mijalis*
15 F.3d 1314 (5th Cir. 1994) ........................................................................13

*Holmes v. J. Ray McDermott & Co..*
682 F.2d 1143 (5th Cir. 1982) ......................................................................11

*Guzman v. Hacienda Records & Recording Studio, Inc.*
808 F.3d 1031, 1036 (5th Cir. 2015) ..............................................................6

*In re Luhr Bros.,*
157 F.3d 333 (5th Cir. 1998) ..........................................................................6

*Illinois Cent. Railroad Co. v. Texas Eastern Trans. Corp.*
551 F.2d 943 (5th Cir. 1977) ........................................................................12

*Johnson v. Cenac Towing, Inc.*
544 F.3d 296 (5th Cir. 2008) ...................................................................... 6 - 7

*Keelan v. Majesco Software, Inc.*
407 F.3d 332 (5th Cir. 2005) ........................................................................13

*McPhillamy v. Brown & Root, Inc.*
810 F.2d 529 (5th Cir. 1987) ........................................................................11

*Vaughan v. Atkinson*
369 U.S. 527, 530 (1962) ..............................................................................10

## STATEMENT OF THE ISSUES

Whether the District Court properly ruled that Joseph Dardar's intentional ramming and detention of the M/V IRON DON subjected him to damages for his detention.

## STATEMENT OF THE CASE

The necessary facts are outlined in detail in the District Court's extensive findings of fact, conclusions of law, and reasons for judgment. ROA.595-614. The District Court awarded damages to Kenai for the defendants' wrongful detention of the M/V IRON DON, Kenai's vessel that was at appellants' shipyard.

Relevant to this appeal, CP Marine had the M/V IRON DON at its yard. To say there had been issues with the work done would be understatement. On February 27, 2019, after significant course of disagreement between the parties, CP Marine sent Kenai a final invoice. ROA.1774. That invoice has, at the bottom, "remit check payments to above company name and address." As requested, that same day, Kenai wrote a check to CP Marine for the whole invoice amount. ROA.1128-29. CP Marine, through its principal, Joe Dardar, asked Kenai to wait to pick up their vessel until the check had cleared. Kenai agreed. ROA.1130.

Well after the check had cleared, Kenai came to pick up the IRON DON. Instead of letting the plaintiffs take their vessel, Joe Dardar, who holds no license,

took the helm of a tug and rammed the IRON DON. The District Court saw video of the ramming and heard testimony about the ramming. After Mr. Dardar, on behalf of CP Marine and Ten Mile Exchange rammed the IRON DON, he detained it. He placed a barge across the waterway. He then invoiced Kenai for his ramming and his detention – an invoice he said he had no intention of collecting.

Mr. Dardar rammed the IRON DON after the vessel had been paid-for in full. He did not, as he would have this Court believe, detain the vessel for safety's sake. Unsatisfied with just the ramming, Mr. Dardar then sent an invoice to Kenai, charging Kenai for the ramming. ROA.1811. He then spent five days blocking Kenai's vessel into the shipyard.

1. **Joe Dardar didn't try to help the IRON DON. He rammed it.**

Appellants argue that Joe Dardar, motivated by charity and a keen interest in safety, sallied forth into the waterway to render aid. Contrary to appellants' assertion, there is ample – indeed, overwhelming – evidence to support the District Court's conclusion that Mr. Dardar rammed the IRON DON not out of some misguided effort toward safety, but out of intentional bad faith. First, there are the videos of the ramming, ROA.1848. These videos featured prominently in trial, and the District Court, and Mr. Dardar, saw the videos repeatedly. Chutzpah is appellants' effort to tell the Court that they didn't ram the IRON DON when Mr. Dardar is right there, on video, ramming the IRON DON.

Second, the testimony of the witnesses shows Mr. Dardar's intention. Jeff Adler was there when the ramming occurred. He took a video of the ramming, and he spoke with Mr. Dardar. He testified:

> Q. After that video, did you have any communication with Mr. Dardar?
>
> A. Yes, I did.
>
> Q. What did you say to him?
>
> A. I was telling him to back off. I said everything was good, trying to calm the situation down. He came out of his wheelhouse and was like about from me to her away by then, and he was yelling at me. **And he said: "If I had my shotgun, you'd be dead."** And at that time, I pointed up to the drone to let him know this was all being recorded, and he just basically went like this to the drone, gave a big finger to the drone. ROA.973-74.

Jonathan Tingley, who took the drone video, agreed. ROA.1015-1020. He testified, as he watched the video:

> Q. Okay. You mentioned earlier that there was smoke coming out of the back, and now we see some prop wash. What does that tell you?
>
> A. Extreme acceleration. [. . . ] This wasn't just to come say hello. I initially thought he (Dardar) was coming to assist us. And that's why I came in a lot closer with the drone, now, because I'm, like, holy cow, this got interesting.

Appellants to tell this Court that there is no evidence to support the District Court's conclusion that Mr. Dardar rammed the IRON DON with intent. That assertion flatly fails.

2. **CP Marine and Ten Mile Exchange invoiced Kenai for the ramming and continued to deprive them of the IRON DON.**

Ramming is, conceivably, a momentary lapse. A flash of anger. But Mr. Dardar's intentional conduct was not limited to those moments when he was at the controls of a tug. Following the ramming, appellees blocked in the M/V IRON DON. A photo of that blockade, ROA.1849, shows what occurred: the barge was positioned across the waterway, to prevent Kenai from accessing it, as Austin Adler explained. ROA.1133-1135. Kenai went every day after the ramming to see if the IRON DON was freed for Kenai to pick up. Each of those days, appellants had blockaded in the IRON DON. After ramming and blockading the IRON DON, Ten Mile Exchange invoiced Kenai for CP Marine's unlawful detention. ROA.1811. Ten Mile Exchange was invoicing Kenai for "continuous secure watch until Iron Don allowed to leave facility."

This whole time, all invoices had been paid-for in full. Though Mr. Dardar said he was worried that somehow, the funds would be recalled, in fact, the funds had reached CP Marine's bank account. ROA.1135. This isn't just testimony from Kenai, either. CP Marine and Ten Mile Exchange's witness, Gina Taromina, testified that by February 28 – the day after the check was written, and days before before March 5, when Mr. Dardar would ram the IRON DON – the funds from the check were in CP Marine's bank account. ROA.1269 – 1270.

## SUMMARY OF THE ARGUMENT

When Joe Dardar rammed the M/V IRON DON, he was acting not negligently or grossly negligently but intentionally. When he detained the IRON DON by blockading it in, he was acting intentionally. When he sent an invoice for $20,750 to Kenai to charge Kenai for his unlawful blockade, he was not acting with gross negligence. He was acting intentionally.

Two conclusions follow. First, the district court's conclusion, that Mr. Dardar rammed the IRON DON not acting out of charity or safety but with the intent to cause harm is not just supported by the record, it is undeniable. Second, Mr. Dardar's intentional conduct is expressly excluded from the *Exxon* 1:1 ratio.

To the extent the *Exxon* ratio applies, it has also been complied with here. The district court afforded attorney's fees. Attorney's fees in a wrongful vessel arrest or detention case are compensatory damages. The attorney's fees are greater than the damages award.

Finally, appellees argue that the District Court should not have applied judicial interest to a punitive damages claim. First, the District Court's award was for five days' delay, caused by the detention. This is a compensatory measure of damages, however described. Second, appellees failed to raise this argument in the district court at any point, waiving the argument.

## ARGUMENT

### 1. Standard of Review

CP Marine and Ten Mile Exchange do not cite the standard of review on a bench trial. The District Court's conclusion that Joe Dardar intentionally rammed the M/V IRON DON is plainly accurate, at this Court, it is also afforded significant deference. The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo. *Barto v. Shore Constr., LLC,* 801 F.3d 465, 471 (5th Cir. 2015) (quoting *Becker v. Tidewater, Inc.,* 586 F.3d 358, 365 (5th Cir. 2009)). As such, this Court should upset the district court's findings of fact only if it is left with the definite and firm conviction that a mistake has been committed. *Id.* (cleaned up).

Findings of fact include determinations of negligence, apportionment of fault, and calculation of damages. See *DePerrodil v. Bozovic Marine, Inc.,* 842 F.3d 352, 356, 358, 361 (5th Cir. 2016). The clearly erroneous standard of review following a bench trial requires even "greater deference to the trial court's findings when they are based on determinations of credibility." *Guzman v. Hacienda Records & Recording Studio, Inc.,* 808 F.3d 1031, 1036 (5th Cir. 2015) (quoting *In re Luhr Bros.,* 157 F.3d 333, 338 (5th Cir. 1998)). This Court entertains a strong presumption that the court's findings must be sustained even though this court might have

weighed the evidence differently." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303 (5th Cir. 2008).

**2. The District Court properly concluded that Joe Dardar rammed the M/V IRON DON intentionally. Then he sought to charge Kenai for the ramming.**

The District Court heard evidence over four days. That evidence includes two videos of an event that was described repeatedly during trial. Outlined above, Kenai owned the IRON DON. There were disputes about the work done and the invoices for the work done. CP Marine kicked Kenai's personnel off their own vessel, then CP Marine sent a final invoice. Kenai paid that invoice that same day. CP Marine told Kenai to wait until the check cleared before they picked up their vessel, and they did. When Kenai came to pick up its vessel, Mr. Dardar rammed them, stopping them from leaving. Then Mr. Dardar sent an invoice, charging Kenai for his services in ramming their vessel.

Though CP Marine tells this Court that the ramming was on account of safety, the District Court followed the overwhelming evidence in concluding it was a ramming on account of anything but charity or goodwill. First are the videos, which the District Court saw repeatedly. Second is the testimony of Austin and Jeff Adler, and John Tingley, all of whom were there. As Jeff Adler testified, Mr. Dardar regretted not having his gun, the better to murder Mr. Adler. Furthermore, as the

District Court noted, Mr. Dardar sent an invoice to Kenai – an invoice he said he never intended to collect on – as an intimidation tactic.

The support for the District Court's conclusion that "Defendants' seizure was pursuant to an invalid maritime lien," ROA.610, is self-evident. So too is the District Court's conclusion that Mr. Dardar's ramming and detention of the IRON DON was committed in bad faith. ROA.611. As the District Court explained, "Defendants detained the vessel pursuant to an invalid maritime lien. When Defendants rammed and detained Plaintiff's vessel, they acted with callous disregard for the safety of the people aboard the vessels." ROA.611. Continuing, the District Court explained that Mr. Dardar, acting on behalf of Ten Mile Exchange and CP Marine, "nevertheless took matters into his own hands" in ramming the IRON DON; that he used "an intimidation tactic" in sending an invoice he never intended to collect; and that the defendants acted "in bad faith and with wanton disregard to the legal rights of Plaintiff." ROA.611-612.

It rather boggles belief to think that Mr. Dardar would, in pique, send an invoice to Kenai two days later, but he was acting on a good-faith, safety-conscious motivation when he decided to ram the IRON DON. The District Court's conclusion that Mr. Dardar rammed the IRON DON in bad faith is amply supported and should be affirmed.

### 3. Mr. Dardar's intentional conduct is not subject to a compensatory cap under *Exxon v. Baker*.

Appellants' principal argument is that under *Exxon v. Baker*, 554 U.S. 471 (2008), compensatory damages must be at a 1:1 ratio with punitive damages in a maritime case. There are two reasons appellants' argument fails. First, *Exxon* applies to gross negligence, but not to intentional conduct. Appellees acted intentionally. Second, if *Exxon* did apply, it is met here because the District Court also awarded attorney's fees, which are compensatory, and which exceed the punitive damages.

A. Exxon *applies to gross negligence, not intentional conduct.*

In fact, *Exxon v. Baker* holds that general damages and compensatory damages should ordinarily be at a 1:1 ratio, but only for more-than-nominal compensatory awards, and only for gross negligence, not for intentional conduct. Shown above, Mr. Dardar's conduct was altogether intentional. *Exxon* does not apply.

That This is not somehow subtext in *Exxon*: it is right there in the holding. The Court held that a 1:1 ratio "would roughly express jurors' sense of reasonable penalties in cases with no earmarks of exceptional blameworthiness." Continuing, the Court said what those earmarks of exceptional blameworthiness are: "intentional or malicious conduct" or "behavior driven primarily by desire for gain." *Id*. As the *Exxon* court explained, intentional or malicious conduct is one basis for going farther afield of the 1:1 ratio. Another is for cases with "modest economic harm."

Applying *Exxon* here is straightforward: the District Court properly found that Mr. Dardar acted intentionally. It could hardly find otherwise: a collision or an allision happens by accident. Ramming does not. So too, the detention is an intentional act. Appellants intentionally placed a barge across a waterway to ensure it could not be reached, and billed Kenai for the privilege. Because appellants acted intentionally, *Exxon* does not apply.

*Exxon* also limits its 1:1 ratio to those cases with significant compensatory damages. The compensatory damages here awarded by the District Court, explained below, are also limited to attorney's fees. Therefore the second *Exxon* requirement – that there be a material compensatory award for comparison – is also lacking.

*Exxon* limits its 1:1 ratio to two circumstances: when there are meaningful consequential damages (at least enough to get a lawyer interested in the case) and to gross negligence – not intentional acts. For reasons plainly laid-out in the District Court's reasons for judgment, this case does not fall under the *Exxon* rubric.

B. *Attorney's fees are compensatory, and the attorney fee award is greater than the punitive damage award.*

To the extent this Court would apply the *Exxon* 1:1 ratio to these facts despite the limitations in the opinion, the judgment passes that test because the District Court also awarded attorney's fees. Courts have routinely held that attorney's fees are compensatory damages in like cases. See *Vaughan v. Atkinson*, 369 U.S. 527, 530, 531 (1962) (maintenance and cure); *Clausen v. Icicle Seafoods, Inc.*, 272 P.3d 827,

832 (Wash. 2012) (holding that attorney's fees are compensatory in nature in a maintenance-and-cure case, collecting cases).

Courts addressing wrongful arrest have likewise treated attorney's fees as compensatory for centuries. See e.g. *The Apollon*, 22 U.S. 362. There, the Supreme Court noted with respect to an award of attorney's fees for wrongful arrest that "[i]t is the common course of the Admiralty, to allow expenses of this nature, either in the shape of damages, or as part of the costs. The practice is very familiar on the prize side of the Court; it is not less the law of the Court in instance causes, it resting in sound discretion to allow or refuse the claim." More recently, this Court has held that attorney's fees are integral to the merits of the case: they are compensatory in nature. See e.g. *Holmes v. J. Ray McDermott & Co*., 682 F.2d 1143 (5th Cir. 1982); *Bilmar Drilling, Inc. v. IFG Leasing Co., et al.*, 795 F.2d 1194 (5th Cir. 1986). The District Court's judgment awarded attorney's fees as a part of damages. The District Court afforded attorney's fees to Kenai as a measure of damages. The attorney's fees are significantly more than the punitive damages. The 1:1 ratio is safe.

**4. The District Court was well within its discretion to afford prejudgment interest.**

Citing a Second Circuit case, appellants tell this Court that punitive damages are not afforded prejudgment interest. Generally, prejudgment interest is not applicable to punitive damages awards under maritime cases. See generally *McPhillamy v. Brown & Root, Inc.*, 810 F.2d 529533 at n. 2 (5th Cir. 1987) (holding

in dicta that it is doubtful that punitive damages should be accompanied by prejudgment interest.)

The closer analogue is *llinois Cent. Railroad Co. v. Texas Eastern Trans. Corp.*, 551 F.2d 943 (5th Cir. 1977). There, the defendant was charged demurrage: what this Court called "an immediate and higher penalty for the detention of railroad cars." So finding, the panel first found prejudgment interest did not apply. 553 F.2d 272, 275. On rehearing, this Court found otherwise, holding that "although adding interest to the penalty adds to the penalty, the shipper could avoid the entire charge by not improperly detaining the cars." Finding that demurrage had one compensatory aspect and one punitive aspect, this Court affirmed prejudgment interest.

As with demurrage in *Illinois Central Railroad*, the district court here afforded punitive damages for the five days CP Marine and Ten Mile Exchange kept Kenai from accessing its own vessel, which delayed Kenai by five days, causing contractual damages. It held "Defendants' wrongful detention of Plaintiff's vessel plainly delayed Plaintiff by five days. Therefore, as a measure of punitive damages, the Court will award Plaintiff the value of its missed contract days for the days that Defendants wrongfully detained the vessel." ROA.612 – 13.[1] Though called punitive damages, the measure of damages was, in fact, compensatory – or at the very least,

---

[1] That the District Court awarded a compensatory measure of damages is also grounds to uphold the damages award under *Exxon*.

it had enough of a compensatory flavor, like *Texas Eastern*, to justify the award of interest.

Furthermore, appellees did not raise this argument to the District Court. An argument not raised before the District Court is waived. See *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) ("an argument must be raised to such a degree that the district court has an opportunity to rule on it." (citing *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).

## CONCLUSION

The District Court's careful, thorough judgment should be affirmed in full.

SUBMITTED BY:

S/Harry E. Morse
Bohman Morse, L.L.C.
400 Poydras Street
New Orleans, LA 70130

## CERTIFICATE OF SERVICE

I certify that on November 4, 2022 the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all counsel.

S/Harry E. Morse

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 3,534 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman 14.

S/Harry E. Morse