# CASE NO. 22-30311

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**KENAI IRONCLAD CORPORATION,**

                             **PLAINTIFF - APPELLEE**

v.

**CP MARINE SERVICES, LLC, TEN MILE EXCHANGE, LLC, ET AL.,**

                             **DEFENDANTS - APPELLANTS**

---

## ON APPEAL FROM
## THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF LOUISIANA

### 2:19-CV-2799

---

## REPLY BRIEF OF APPELLANTS, CP MARINE SERVICES, LLC AND TEN MILE EXCHANGE, LLC

---

                             Alfred J. Rufty, III (#19990)
                             Jones Walker LLP
                             201 St. Charles Avenue - 48th Floor
                             New Orleans, Louisiana 70170-5100

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Kenai Ironclad Corporation | Martin Bohman of Bohman Morse, L.L.C. New Orleans, LA |
| Kenai Ironclad Corporation | Harry Morse of Bohman Morse, L.L.C. New Orleans, LA |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| CP Marine Services, L.L.C. | Alfred J. Rufty, III of Jones Walker LLP New Orleans, LA |
| Ten Mile Exchange, L.L.C. | Alfred J. Rufty, III of Jones Walker LLP New Orleans, LA |

*/s/ Alfred J. Rufty, III*
Alfred J. Rufty, III (#19990)
Attorney of Record for CP Marine Services, L.L.C. and Ten Mile Exchange, L.L.C.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

TABLE OF CONTENTS................................................................................ iii

TABLE OF AUTHORITIES ........................................................................... iiv

ARGUMENT ..................................................................................................1

    A. Dardar had legitimate safety concerns, and he acted reasonably (not in bad faith) in stopping plaintiff's surprise removal effort ............................1

    B. Because there was no detention—or at worst a three-day detention causing no harm—plaintiff did not prove a wrongful-detention claim...........4

    C. The lack of any real harm from defendants' conduct is fatal to plaintiff's claim for punitive damages. .........................................................6

    D. No pre-interest on punitive damages……………….………………..10

CONCLUSION ..............................................................................................12

CERTIFICATE OF SERVICE .........................................................................12

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ....................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*The Apollon*,
    22 U.S. 362 (1824)..................................................................................9

*Bosley v. Allain*,
    2011 U.S. Dist. LEXIS 47218, at *5 (M.D. La. 4/27/2011)................................6

*Budinich v. Becton Dickinson and Company*,
    486 U.S. 196, 108 S.Ct. 1717 ..................................................................7, 8, 9

*Deus v. Allstate Ins. Co.*,
    15 F.3d 506 (5th Cir. 1994) ......................................................................8

*Illinois Cent. Railroad Co. v. Texas Eastern Trans. Corp.*
    551 F. 2d 943 (5th Cir. 1977) ..................................................................10, 11

*McPhillamy v. Brown & Root, Inc.*,
    810 F.2d 539, 533 at n. 2 (5th Cir. 1987) .......................................................10

*Marek v. Chesny*, 473 U.S. 1, 87 L. Ed. 2d 1,
    105 S. Ct. 3012 (1985) (BRENNAN, J., dissenting)...........................................8

*Neal v. Barisich, Inc.*, 707 F. Supp. 2d 862 (E.D. La. 1989).....................................6

*Richard v. City of Harahan*,
    6 F. Supp. 2d 565 (E.D. La. 1988).................................................................6

**Other Authorities**

Fed. Rule Civ. Proc. 54................................................................................10

10 C. Wright, A Miller, & M. Kane, Federal Practice and Procedure:
    Civil § 2665 (1983)..................................................................................7

# ARGUMENT

A. **Dardar had legitimate safety concerns, and he acted reasonably (not in bad faith) in stopping plaintiff's surprise removal effort.**

Plaintiff mocks defendants for arguing that Dardar was "motivated by charity" and "sallied forth into the waterway to render aid". *Appellee's Brief*, at 8. This is not what defendants argue. Defendants argue that Dardar saw an unsafe operation underway that jeopardized other vessels and equipment in his shipyard and that he acted to stop it, justifiably, not in bad faith. This conclusion flows from the following facts, none of which is disputed:

- IRON DON was moored at an interior shipyard dock in a narrow canal, made narrower by a drydock and other vessels in the shipyard's care along its banks.[1] Navigating in the canal is inherently risky.[2] That's why the shipyard returns repaired vessels to its customers in the Intercoastal Waterway nearby;[3]

- IRON DON is a large vessel, which could not be turned around safely in the canal; it had to be removed by backing it out of the canal with tug assistance;[4]

- CP Marine routinely uses two tugs for this maneuver. Following this practice, CP Marine backed IRON DON out of the canal to return it to plaintiff on March 11, with one tug astern and the other by its bow to maintain control;[5]

---

[1] See ROA.1848 (Exh. 22).

[2] See ROA.702-03, 720

[3] See ROA.703, 719.

[4] See ROA.702.

[5] See ROA.702, 720.

1

- For safety reasons, CP Marine does not allow customers to remove their own vessels from the dock in its private canal;[6]

- When Dardar saw plaintiff unsafely trying to navigate IRON DON out of the canal with one very small tug, he intervened;[7]

- Dardar crossed the canal in the shipyard's tug and bumped into the trespassing tug to hold it in place until the matter could be resolved.[8] He recognized the trespassing tug and called its owner, Tom Dinh of Tom's Marine, and the Coast Guard;[9]

- Meanwhile, Austin Adler tried to turn the IRON DON around in the canal by engaging its bow-thruster engine (its only operable engine at the time). With the engine on, pivoting the vessel to port, Adler returned to the deck to handle lines—leaving the vessel in motion with no one at the controls;[10]

- Adler had never before operated the IRON DON, and there is no evidence he had ever operated a vessel of its size;

---

[6] See ROA.703. In this sense, CP Marine functions like a valet parking garage. When garage customers return for their vehicles, they present a ticket to the garage attendant, who retrieves the vehicle from its parking spot within the garage and returns it to the customers at the garage entrance. Customers are not free to wander through the garage to retrieve their own vehicles. That would create safety hazards and present a liability risk for the garage owner, who is responsible for all vehicles in the garage. When a garage attendant stops customers from venturing into the garage to retrieve their own cars, he is not depriving them of their property rights. He is acting prudently to maintain the facility's procedures to ensure safety and reduce liability risks. The same is true of Mr. Dardar's thwarting of Kenai's attempt to retrieve the IRON DON from the interior of the shipyard premises, in defiance of the shipyard's redelivery procedure.

[7] See ROA.686, 697, 722.

[8] See ROA.686, 697.

[9] See ROA.709; see also ROA.1848 (drone video showing Dardar on phone).

[10] See ROA.524, 6990700, 707-10, 722.

2

- The Coast Guard instructed Dardar to take control of the pivoting IRON DON and to resecure it at the dock.[11] As he tried to do this, Adler cut the line with a knife;[12]

- The bumping caused no damage to the trespassing tug.[13] Tugs are designed for contact with other vessels;[14]

- Dardar has purposely bumped a tug into another vessel on thousands of ocassions without ever damaging a vessel or injuring anyone;[15]

- There was no "hard ramming", according to plaintiff's own witness, Tom Dinh (the trespassing tug's owner). Dinh believed Dardar's intent was not to ram his tug but rather "to hold it [in place] to make sure we don't move the boat."[16]

- Dinh also indicated that Dardar was trying to minimize the impact. Dinh explained that a tug is unlike a car; "you can't … brake in, like, one minute and stop. Even though you stop it [referring to the shipyard's tug], you still got motion in the waters and bump it [referring to his own tug]." Dinh added, "that's what they build a bumper rubber for;"[17]

- No one testified that the impact was hard or dangerous, not even Austin Adler's father, who was on the trespassing tug. In the drone video, the two people on the trespassing tug's deck were clearly undisturbed by the mildish impact.[18]

---

[11] See ROA.710.

[12] See ROA.1239 (Adler); see also ROA.1848 (Exh. 21)(cell phone video at 1:10).

[13] See ROA.1178 (Dinh)(no recollection of any damage to his tug).

[14] See ROA.1198 (Dinh)("That's what they build a bumper rubber for").

[15] See ROA.1410.

[16] See ROA.1198 (Dinh).

[17] See ROA.1198 (Dinh); see also ROA.1410 (Dardar)(When one tug contacts another, "we're rubber against rubber.").

[18] See ROA.1848 (Exh. 22).

These facts were established at trial, and no contrary evidence was presented. Even now plaintiff does not dispute these facts. Plaintiff just ignores them. These facts show that defendants were justified in stopping plaintiff's effort to remove IRON DON from the shipyard on Mardi Gras day and that the contact between tugs was benign and reasonable under the circumstances.

The district court's findings and conclusions to the contrary are clearly erroneous. There is no basis in the evidence for the district court's finding that, in bringing the shipyard's tug into contact with the trespassing tug, Dardar acted in gross disregard for anyone's safety. That finding is not supported by any testimony, and it is flatly refuted by plaintiff's own witness, Tom Dinh. That finding—of an intentional hard ramming—is clearly erroneous and should be reversed, as should the punitive-damage award that is based principally upon it.

These undisputed facts also show that Kenai's surprise removal effort was unsafe and was appropriately stopped. Because Dardar's intervention was justified, it was not an act of bad faith and does not support Kenai's claim for wrongful detention.

**B.    Because there was no detention—or at worst a three-day detention causing no harm—plaintiff did not prove a wrongful-detention claim.**

The district court's ruling lowers the bar for proving a wrongful arrest or detention to a dangerous degree. Consider that in this case:

- The alleged detention (according to the district court) was just five days;[19]

- Kenai suffered no damages from this brief delay;[20]

- There is no evidence that CP Marine refused any request from Kenai to redeliver the vessel;

- When contacted by Kenai on March 10, CP Marine honored its request and redelivered the IRON DON on March 11;

- On March 7, four days earlier, CP Marine had offered to redeliver the vessel, as Kenai admits,[21] but Kenai did not accept the offer;

- Not until March 5 was Kenai even ready to have its vessel back. That was just two days before CP Marine offered redelivery;[22]

- The vessel was returned to Kenai voluntarily, well before suit was filed; and

- In this suit, the only relief sought was money—money to compensate Kenai for losses (for allegedly deficient repairs and delay) that the district court found Kenai had not suffered.

Given these undisputed facts, the lower court erred in concluding that Kenai proved a claim of wrongful detention. As explained above, Kenai's unannounced intrusion into the shipyard's private canal on a holiday was reckless and was

---

[19] See ROA.612.

[20] See ROA.607 ("… Plaintiff's timeline for getting to Alaska was 'still on track' when the IRON DON left CP Marine's shipyard.").

[21] See ROA.1236 (Austin Adler).

[22] See ROA. 1236 (Austin Adler). Plaintiff erroneously argues that defendants "blockaded" the IRON DON in the shipyard on the days after March 5 by positioning a barge or barges in the way. See Appellee's Brief, at p. 4. At trial, Dardar explained that the barge in the canal was being unloaded, as can be seen in plaintiff's own photographs, and that it would have been moved out of the way to allow CP Marine to remove the vessel from the shipyard on that day, had plaintiff accepted defendants' offer.

appropriately stopped. But, even if it wasn't, the result was just a harmless delay of two or three days (as CP Marine's offer to return to vessel to Kenai came just two days later). A harmless delay of two or three days is not actionable. Harm from the defendants' conduct is an essential element of any tort claim, and none was suffered here from the brief delay, as the district court found. Nor was litigation necessary, since the vessel had been voluntary returned to Kenai well before suit was filed. No prior case has found a wrongful arrest or detention in remotely similar circumstances. If a harmless two or three day delay is now actionable, a flood of suits is sure to follow.

The district court erred in concluding that Kenai proved a claim of wrongful detention, and its ruling should be reversed.

C. **The lack of any real harm from defendants' conduct is fatal to plaintiff's claim for punitive damages.**

Punitive damages may not be awarded where, as here, the complained of conduct caused no actual harm. See, e.g., *Neal v. Barisich, Inc.*, 707 F. Supp. 2d 862, 873 (E.D. La. 1989) ("It is generally held that punitive damages are not recoverable unless the plaintiff recovers actual damages as well."); *Richard v. City of Harahan*, 6 F. Supp. 2d 565 (E.D. La. 1988) ("Recovery of punitive damages necessarily turns on recovery of compensatory damages."); *Bosley v. Allain*, 2011 U.S. Dist. LEXIS 47218, at *5 (M.D. La. 4/27/2011) (dismissing plaintiff's claim for punitive damages, in part, because plaintiff had failed to present any evidence to

6

establish that he had any harm due to the defendant's conduct). Given the district court's finding that the delay caused no harm and the absence of a finding (or evidence) of any actual harm from the tug-bumping, these cases apply.

In an effort to satisfy the punitive-damage perquisite of an actual harm, plaintiff argues that its attorneys' fees were awarded as compensatory damages. Plaintiff is incorrect.

As the Supreme Court in *Budinich* noted, attorney's fees are generally regarded as costs and are not considered part of the merits of the action. The Court pointed out the generally collateral nature of attorney's fees:

> As a general matter, at least, we think it indisputable that a claim for attorney's fees *is not part of the merits of the action to which the fees pertain*. Such an award *does not remedy the injury giving rise to the action*, and indeed is often available to the party defending against the action.[23]

The Court in *Budinich* evaluated the history of attorney's fees, stating that at common law, attorney's fees were "regarded as an element of 'costs' awarded to the prevailing party, *citing* 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil § 2665 (1983), which are not generally treated as part of the merits judgment. The Court further remarked that "[m]any federal statutes providing for attorney's fees continue to specify that they are to be taxed and collected as 'costs.'"

---

[23] *Budinich v. Becton Dickinson & Co.,*, 486 U.S. 196 at 200, 108 S.Ct. 1717. (Emphasis added)

*Citing Marek v. Chesny*, 473 U.S. 1, 43-48, 87 L. Ed. 2d 1, 105 S. Ct. 3012 (1985) (BRENNAN, J., dissenting) (*citing* 63 such statutes).

After *Budinich*, this Court stated in *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 521 (5th Cir. 1994), that a collateral action "is one 'which is subsidiary to another action.'" This Court held that "claims for attorneys' fees and costs are collateral because they are dependent on, and usually await, a determination of the claim on the merits. A claim for attorneys' fees or costs generally is not an independent claim for relief essential to the outcome of the case as a whole." *Id.*

The language of the Judgment also shows that Kenai's attorney fees were awarded as costs, not damages. The Judgment was rendered in favor of Kenai "in the amount of $17,580.50, plus costs and reasonable attorney's fees", with pre-judgment interest to run on "this amount" from March 5, 2019. ROA.615. The word "amount" here does not change meanings mid-sentence. It refers in both appearances to the damages awarded of $17,580.50; that is the amount of damages awarded and that is the amount upon which pre-judgment interest runs.

Kenai's contrary reading is that "amount" changes meaning from one phrase to the next and includes, in its latter appearance, attorney's fees and costs. That is plainly wrong. Under that view, the Judgment would have to be interpreted as awarding prejudgment interest from March 2019 on Kenai's court costs, for a case not even filed as of the date. It is not reasonable to conclude that the district court

intended for "amount" to mean two different things in one sentence. Nor is it reasonable to believe that the district court meant to award prejudgment interest on Kenai's court costs. The language of the Judgment thus indicates that attorney's fees are to be treated like court costs, not as damages upon which prejudgment interest should run.

Plaintiff cites *Apollon*, a case decided by the Supreme Court in 1824, for its statement that attorney's fees could be awarded as damages or costs. In the *Apollon*, counsel fees were evidently proven at trial as damages and were awarded as such by the district judge.

*Apollon* does not support plaintiff's argument that its attorneys' fees were awarded here as damages. Because the opinion says that counsel fees may be awarded either as damages or costs, it does not tell us which applies here. Further, the modern view is that awards of counsel fees should generally be regarded as an award of costs. See, e.g., *Budinich*, 486 U.S. at 200.

Still further, in *Apollon*, counsel fees were awarded as damages at trial, after having evidently been proven at trial. There is no suggestion that the attorney fees were awarded in a post-trial proceeding, and they are listed in a sum certain in a literary of the damages proved at trial. At most, then, *Apollon* would support the proposition that attorney fees may be awarded as damages at trial when they are proven as damages at trial.

9

That mirrors the modern rule under Rule 54 of the Federal Rules of Civil Procedure. In Rule 54(d), Congress treats attorney's fees as costs (not damages), which are to be sought through a motion post-trial, "unless the substantive law requires those fees to be proved at trial as an element of damages." See Fed. R. Civ. P. 54. Kenai did not present evidence of its attorney's fees at trial in order to prove them as an element of damages. Both Kenai and the District Court clearly treated Kenai's attorney's fees as costs to be dealt with post-trial, in the event Kenai were in some sense to prevail, not as damages to be proved at trial. Kenai should be careful what it wishes for. If, as Kenai now argues, its attorney's fees were an element of its damages, this would mean they had to be proved at trial. If this Court accepts Kenai's characterization of its attorney's fees as damages, then the award of attorney's fees must be reversed for an utter failure of proof at trial.

### D.   No pre-interest on punitive damages.

Despite acknowledging that pre-judgment interest is generally not allowed on punitive damages, citing *McPhillamy v. Brown & Root, Inc.*, 810 F.2d 539, 533 at n. 2 (5th Cir. 1987), Kenai argues that its punitive-damage award was partly compensatory and that pre-judgment interest therefore should be allowed. To the contrary, the punitive-damage award here was entirely punitive. It was not partly a penalty and partly compensatory, as in the *Illinois Central Railroad* case upon which

Kenai relies.[24] Contrary to Kenai's argument ("the measure of damages was, in fact, compensatory"), see *Appellee's Brief at 12*, the district court found that Kenai suffered no damage from delay at CP Marine's shipyard. This is why the court labeled the award as one of punitive damages, even though came up with its number by considered the number of days of alleged delay. Kenai's analogy thus fails. Because the award was entirely punitive, the district court erred as a matter of law in awarding pre-judgment interest.

Kenai also claims that defendants have waived the objection to the award of interest on punitive damages by not raising the issue in the trial court. The obvious answer is that defendants had no idea until it happened that the district court would award interest on punitive damages in the Judgment. Plaintiff did not request this relief in the trial court and defendants could not have anticipated this part of the Judgment. Defendants are surely entitled to appeal this surprising aspect of the Judgment and did not waive that right.

---

[24] See *Illinois Central Railroad Co. v. Texas Eastern Trans. Corp.*, 551 F. 2d 943 (5th Cir. 1977).

## CONCLUSION

For the reasons stated above, and those presented in Appellants' Original Brief, Appellants respectfully submit that the Judgment awarding plaintiff punitive damages, attorney's fees, and interest on punitive damages should be reversed.

Respectfully submitted,

*/s/ Alfred J. Rufty, III*
Alfred J. Rufty, III (#19990)
Jones Walker LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8547
Facsimile: (504) 589-8000
arufty@joneswalker.com
Attorney for CP Marine Services, LLC and
Ten Mile Exchange, LLC, Appellants

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 2nd day of December, 2022 served a copy of the foregoing on counsel for all parties to this proceeding by electronic filing, facsimile, hand delivery, and/or by mailing the same by United States mail, properly addressed and first class postage prepaid.

*/s/ Alfred J. Rufty, III*
ALFRED J. RUFTY, III

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

1. This brief complies with the type-volume limitation of Fed. R. App. P 32(a)(7)(B) because:

    This brief contains 2,480 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in Times New Roman – 14 point.

*/s/ Alfred J. Rufty, III*
Alfred J. Rufty, III
Attorney for CP Marine Services, LLC and
Ten Mile Exchange, LLC
Dated: December 2, 2022